UNITED STATES D1ISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY LOUISE BERG,

     *Plaintiff,*

*v.*                                   CASE NO. 13-cv-11844

COMMISSIONER OF                DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E.
                                      BINDER

     *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports

the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS**

**RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that

Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

II.     **REPORT**

A.      **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of

Reference, this case was referred to this magistrate judge for the purpose of reviewing the

Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits (DIB). The matter is currently before this Court on cross-motions for

summary judgment.[2] (Docs. 13, 14.)

Plaintiff filed an application for a period of disability and DIB with a protective filing

date of June 16, 2010, alleging that she became unable to work on March 20, 2010.

(Transcript, Doc. 10-2 at 67.)  The claim was denied at the initial administrative stage. (*Id*.)

On September 15, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ")

Kathleen H. Eiler, who considered the application for benefits *de novo*. (Tr. at 87-115.) In

a decision dated December 2, 2011, the ALJ found that Plaintiff was not under a disability

within the meaning of the Social Security Act at any time from March 20, 2010, through the

date of the ALJ's decision. (Tr. at 80.) Plaintiff requested Appeals Council review of this

decision. (Tr. at 57-60.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 27, 2013, when the

Appeals Council denied Plaintiff's request for review. (Tr. at 32-35.) On April 24, 2013,

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of
Michigan Local Rule 7.1(f)(2).

Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would

decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI). Plaintiff's Social Security disability determination is to be made through the

application of a five-step sequential analysis:

>  Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

>  Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

>  Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

>  Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

>  Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without

a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See*

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the

Commissioner is required to show that "other jobs in significant numbers exist in the national

economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§

416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and

found at step one that Plaintiff met the insured status requirements through December 31, 2014,

and had not engaged in substantial gainful activity since March 20, 2010. (Tr. at 69.) At step

two, the ALJ found that Plaintiff's degenerative disc disease, arthritis, hypertension, headaches

and bipolar disorder were "severe" within the meaning of the second sequential step. (*Id*.)  At

step three, the ALJ found no evidence that Plainiff's combination of impairments met or

equaled one of the listings in the regulations. (Tr. at 70-73.) The ALJ found that the Plaintiff

had the residual functional capacity (RFC) to perform

> light work as defined in 20 C.F.R. 404.1567(b) except that she can never climb ladders, ropes, or scaffolds.  The claimant can frequently climb ramps and stairs.  She can never crawl, but can frequently balance, stoop, crouch and kneel.  The claimant can occasionally reach with her left upper extremity.  She retains the mental capacity to perform simple, routine one or two-step tasks.  The claimant can occasionally interact with supervisors and coworkers, but should never interact with the general public.  She would work best in relative isolation or in a small familiar group (Tr. at 73.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr.

6

at 79.)  The ALJ also found that as of the alleged disability onset date, Plaintiff was 52 years

old, which put her in the "individual closely approaching advanced age" category. *See* 20 C.F.R.

§§ 404.1563 and 416.963. At step five, the ALJ found that Plaintiff could perform the

requirements of light exertional level and unskilled occupations. (Tr. at 80.) Therefore, the ALJ

found that Plaintiff was not disabled. (*Id.*)

### E.      Administrative Record

A review of the relevant medical evidence contained in the administrative record

indicates that Plaintiff has a history of bipolar disorder.[3] (Tr. at 273-347.)  Plaintiff began

psychiatric treatment in 1996.  (Tr. at 344.)  In September 2006, Plaintiff  received in-patient

treatment for mood disorder with suicidal ideation. (Tr. at 273.)  Upon her formal voluntary

admission to the Behavioral Medicine Center of HealthSource of Saginaw, Plaintiff complained

of having relationship problems and problems at work.  (Tr. at 273.)   She reported

inappropriately confronting a customer at work after discontinuing her prescribed Paxil a few

weeks earlier.  She also reported leaving and returning to her husband twice in the previous few

weeks.  She reported suicidal ideation, with thoughts of "wanting to end it." (*Id.*)  James

Bender, D.O. prescribed Paxil, Abilify, Mobic and Ambien, and discharged Plaintiff to

outpatient psychiatric treatment.  (Tr. at 275.)

In January 2009, Plaintiff sought treatment for her bipolar disorder from Saginaw

---

[3]Because Plaintiff's arguments for relief are confined to the Commissioner's determination regarding her bipolar disorder, a recitation of Plaintiff's treatment for her physical impairments is unnecessary.

Psychological Services. (Tr. at 295.)   In May 2009, Plaintiff terminated treatment after assessment and treatment plan sessions, claiming she could not afford therapy. (Tr. at 296.) The discharging therapist noted Plaintiff's history of non-compliance with her medication and therapy in assessing a poor to grave prognosis. (*Id.*)  Plaintiff's psychiatric medications were noted as Paxil and Lamictal. (Tr. at 297.)

In September 2009, Plaintiff began treatment for her bipolar disorder with Sachin Nagarkar, M.D. (Tr. at 332.) Dr. Nagarkar notes that her manic episodes include grandiose delusions and incessant talking, and Plaintiff's comments that during her depressive episodes she does not want to get out of bed and is very tearful. (Tr. at 332.) Dr. Nagarkar continued Plaintiff on Paxil and Lamictal, adjusting the doses in November and December 2009. (Tr. at 331-332.)

In May 2010, Plaintiff began treating with Usha Movva, M.D. after being referred to Tuscola Behavioral Health Systems (TBHS). (Tr. at 340.)  During her Initial Psychiatric Evaluation with Dr. Movva, Plaintiff noted that her depression and mood is much improved when she is taking Paxil and Lamictal. (Tr. at 343.)   Dr. Movva diagnosed Plaintiff with bipolar disorder, and prescribed Paxil and Saphris, for mood stability. (Tr. at 345.)  At her next appointment, Dr. Movva noted that Plaintiff discontinued Saphris after three days because she "did not like the feeling" and did not fill her prescription for Paxil. (Tr. at 347.)  Plaintiff stated she did not fill the prescription because she did not have the money, but then noted that she had applied for and was approved for the TIP program. (*Id.*) Dr. Movva advised Plaintiff to fill and

take her Paxil prescription and was restarted on Lamictal. (*Id*.)

A progress note from TBHS in August 2010 indicates that Plaintiff was taking her medication, as prescribed, and felt she had more motivation and energy and that her moods were more stable. (Tr. at 382.) At her medication review with Dr. Movva that same month, she reported she was doing fairly well and much better since resuming with her prescribed medication. (*Id*.)

In September 2010, Mark Garner, Ph.D., the reviewing health professional for the Disability Determination Services, concluded that Plaintiff retained the ability to do one and two step tasks on a sustained basis. (Tr. at 406.) Dr. Garner also concluded that Plaintiff could not manage any benefits awarded due to substance abuse. (*Id*.)

A TBHS progress note from October 2010 relates Plaintiff's report that she felt her medications were working well, and that her moods had been more stable as a result of the increase of her Lamictal dose. (Tr. at 411.) In November, a TBHS progress note indicated that Plaintiff had resumed attending church services, which had helped improve her moods. (Tr. at 409.) A medication review with Dr. Movva indicated that Plaintiff stated she was doing fairly well. (Tr. at 410.)

At her medication reviews in January and February 2011, Plaintiff reported feeling "much better." (Tr. at 470-471.) At her medication review in April 2011, she reported doing fairly well and expressed her desire to continue her medication without change because she was "doing better." (Tr. at 469.)

During her July 2011 medication review, Plaintiff reported that she was worried about losing her house, and that, if her Social Security hearing did not "come back positive..she has to get a job...[to] be able to pay for the house."  (Tr. at 487.)

In June 2011, Dr. Movva completed a Mental Impairment Questionnaire in which she noted that Plaintiff was markedly limited in her ability to interact with appropriately with the general public, and moderately limited in her ability to maintain attention and concentration, work without distraction, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, getting along with co-workers and complete a normal workweek without psychological symptoms. (Tr. at 463-464.)  She further noted that Plaintiff was not significantly limited in her ability to remember and carry-out one and two-step instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (*Id*.)

In October 2011, Plaintiff underwent a consultative examination with Nathalie Menendes, Psy.D., a licensed psychologist.  According to Dr. Menendes' examination, Plaintiff

> is able to understand, retain, and follow one and two step instructions.  She is able to perform and remember simple, routine and repetitive tangible tasks.  She does not have any intellectual deficits and should be able to perform complex or multi-step tasks, make independent work related decisions, and engage in abstract thinking and work that is not routine.

(Tr. at 547.)  Dr. Menendes opined that Plaintiff's symptoms of bipolar disorder were severe and would interfere ability to perform any job duty on a consistent and reliable basis. (*Id*.)  Dr. Menendes noted that Plaintiff's substance abuse disorder was in remission. (*Id.*)

10

In the Function Report Plaintiff completed in July 2010, Plaintiff noted she was able to drive, care for pets, shop, cook, do laundry and light housework, iron, sew, make stained glass crafts, watch television, read and play games.  (Tr. 212-219).

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> can perform work at the light exertional level, however, she can never climb ladders, ropes, or scaffolds and can never crawl.  She can frequently climb ramps or stairs, frequently balance, stoop, crouch , or kneel.  She can occasionally reach with the upper left extremity. She retains the mental capacity to perform simple, routine, one or two-step tasks.  She can occasionally interact with supervisors and co-workers but should never interact with the general public.  She would work best in relative isolation or in a small familiar group.

(Tr. at 108-109.)  The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the jobs of production inspection (2,000 jobs regionally), general office clerk (2,500 jobs regionally), and machine operator (4,000 jobs regionally). (Tr. at 109-111.)

The ALJ then asked the VE to consider the same hypothetical individual who, "would require at least two unscheduled breaks per day lasting at least 30 minutes each." (Tr. at 111.) The VE responded that such a limitation would be work preclusive.  (*Id*.)

**F.     Analysis**

**1.     Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a reduced range of light work. (Tr. at 73.)  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of

objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.)  As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ's determination is not supported by substantial evidence because it rejected more restrictive limitations set forth in the opinion of Dr. Menendes, the consulting examiner, and because the hypothetical posed to the VE did not

account for Plaintiff's moderate deficiencies in maintaining concentration, persistence or pace.

### a.      Medical Source Evidence

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013)(internal citations omitted).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical

source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Even if an ALJ determines that plaintiff's treating physician's opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013)(citing *Blakley v.Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009)).

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.*

Because the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source

of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a dissension's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

Here, despite Plaintiff's disagreement with the outcome, I suggest that the ALJ properly applied the regulatory standards for evaluating medical source evidence.  Although it is not clear if the ALJ gave Plaintiff's treating psychiatrist, Dr. Movva's opinion controlling weight, she did give it deference over the opinions of consulting examiner Dr. Menendes and non-examining reviewer, Dr. Garner.   The ALJ notes that she gives "significant" weight to Dr. Movva's opinion, "limited" weight to Dr. Menendes' opinion, and "little" weight to Dr. Garner's opinion.   (Tr. at 76-78.)    In so doing, the ALJ deferred to Plaintiff's treating physician's opinion and adhered to the continuum for assigning weight to medical source opinions.  *See Gayheart,* 710 F.3d at 375.

Indeed, absent evidence that Dr. Movva's opinion was not well-supported by medically accepted clinical techniques and inconsistent with other substantial evidence in the record, the

ALJ was required to accept Dr. Movva's opinions over those of Dr. Menendes.  *See id*.

Plaintiff does not argue, nor does my review of the record evidence suggest that Dr. Movva's

opinions were not well-supported by medically accepted clinical techniques or were inconsistent

with other substantial evidence in the record.

Additionally, Dr. Movva's opinion was developed after more than a year of observing

and treating Plaintiff and was consistent with the contemporaneous notes she made during

treatment.  (Tr. at 340-487.)  In contrast, Dr. Menendes opinion was rendered after a single

examination of Plaintiff, and was based largely on Plaintiff's subjective complaints.  (Tr. at

544-548.)  I therefore conclude that the ALJ's decisions regarding the weight to give the

medical source opinions was supported by substantial evidence.

### b.      Vocational Expert Testimony

Plaintiff argues that the VE testimony regarding the existence of other jobs in the

national economy that she could perform given her RFC is not supported by substantial

evidence because the hypothetical posed to the VE did not contain specific limitations regarding

Plaintiff's moderate concentration, persistence and pace impairment.

> In order for a vocational expert's testimony in response to a hypothetical question to
> serve as substantial evidence in support of the conclusion that a claimant can perform
> other work, the question must accurately portray a claimant's physical and mental
> impairments.

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).   Plaintiff applies the common

argument that the hypothetical limitation, such as the one the ALJ used here, for "simple,

routine, one or two-step tasks" fails to account for moderate concentrational deficiencies.  As

noted by another court in this District,

> [t]here are cases ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical to unskilled work or simple, routine tasks–but also other cases that have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.

*Roberts v. Comm'r of Soc. Sec.*, 2011 WL 4407221 at *8 (E.D. Mich., Aug. 8, 2011)(internal

citations omitted).

Although the *Roberts* court acknowledged "that a hypothetical simply limiting a claimant

to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in

concentration, persistence and pace...," it determined that "there is no bright-line rule requiring

remand whenever an ALJ's hypothetical includes a limitation of simple, routine...work, but

excludes a moderate limitation in concentration." *Id.* Indeed, the Sixth Circuit has rejected "the

notion that a hypothetical must contain talismanic language," instead determining that a

hypothetical question is sufficient if it encompasses Plaintiff's relevant limitations. *Street v.*

*Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D. Mich 2005)(citing *Smith v. Halter*, 307

F.3d 377, 379 (6th Cir 2001)).  Accordingly, a court "**must look at the record as a whole and**

**determine if substantial evidence supports the ALJ's decision.**" *Roberts,* 2011 WL 4407221

at *8(emphasis added)(citing *Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D. Mich 2001), *Hess*

*v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008), *Lewicki v.*

*Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010); *Marini v. Comm'r*

*of Soc. Sec.*, 2014 WL 1230034, at *5 (E.D. Mich. March 25, 2014).

The finding of a moderate limitation in concentration, persistence, or pace must be considered in conjunction with the medical experts' conclusions, and other evidence, that suggests Plaintiff could successfully perform occupational tasks.  *Roberts*, 2011 WL 4407221 at *8.  In this case, all of the medical opinion evidence supports the ALJ's hypothetical limitation for "simple, routine, one or two-step tasks."  Dr. Movva noted in the Mental Impairment Questionnaire she completed that Plaintiff was not significantly limited in her ability to understand and carry out one or two-step instructions. (Tr. at 463).  After reviewing Plaintiff's psychiatric records, including those of Dr. Movva, Dr. Garner also determined that Plaintiff retained the ability to do one and two-stepped tasks on a sustained basis. (Tr. at 406).  Most notably, even Dr. Menendes found that Plaintiff was "able to understand, retain, and follow one and two step instructions." (Tr. at 547).  Dr. Menendes further notes that Plaintiff "is able to perform and remember simple, routine, and repetitive tangible tasks." (*Id*.)

In addition, Plaintiff's described daily activities demonstrate sufficient concentration to complete simple one or two-stepped tasks.  Plaintiff noted that she was able do light house work, cook, work on crafts, watch television, take care of her husband, take care of her pet, drive a car, shop, sew, stain glass, and read. (Tr. 78, 213-216).  That Plaintiff could concentrate sufficiently to sew, make stained glass and other crafts, cook and read is further evidence that the restrictions set forth in the ALJ's hypothetical fully encompassed Plaintiff's concentrational limitations.  *See e.g., Marini,* 2014 WL 1230034 at *18 (driving, preparing simple meals, playing video games and watching television demonstrate concentration adequate for

performing one and two step tasks on a sustained basis); *see also LaTarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009)(Plaintiff's ability to concentrate enough to watch television, read to her children, drive and attend school functions belied the need for more specific concentrational limitations).

Finally, Plaintiff has not explained why more detailed or specific limitations were required in order to account for her deficiencies in concentration, persistence and pace, nor has she suggested what those additional limitations should be. Without any explanation as to why the ALJ's restriction for "simple, routine, one or two-stepped tasks" does not account for Plaintiff's concentration, persistence or pace impairment, I must conclude that the restriction for simple, routine one or two step tasks contained within the ALJ's hypothetical adequately addresses Plaintiff's concentrational deficiencies. *See Marini*, 2014 WL 1230034 at *18; *see also, Lewicki*, 2010 WL 3905375, at *3.

Given the unanimity among the medical experts as to Plaintiff's ability to perform one or two-step tasks, the concentration exhibited by Plaintiff in her activities of daily living and the absence of any explanation as to why more detailed or specific limitations are necessary to account for Plaintiff's impairments, I suggest that substantial evidence supports the ALJ's hypothetical. Accordingly, the VE's testimony, based upon that hypothetical, and the ALJ's determination that Plaintiff is not disabled are likewise supported by substantial evidence.

## G.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ,

which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                                s/ Charles E. Binder
                                                CHARLES E. BINDER
Dated: September 10, 2014                        United States Magistrate Judge